```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

AHMED FARAG, MOHAMED ABDELHAMID,
PIERRE MANKIT CHAN, SI CHAN CHEN, YAU
CHEUNG, YUK CHOR LUI, et al.,                    MEMORANDUM & ORDER
                                                 20-cv-4191(EK)(LB)
                  Plaintiffs,

           -against-

XYZ TWO WAY RADIO SERVICE, INC.,
MOHAMED MOWAD, SANDY CHECK, JERRY
CHING HOR, AHMED MOHARREM, et al.,

                  Defendants.

--------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiffs are a group of former shareholders of defendant XYZ Two Way Radio Service, Inc., which provides ground-transportation services. Plaintiffs allege that XYZ wrongfully terminated them and forced them to sell their shares at below-market prices. They sued XYZ and eight members of its board of directors (including Mohamed Mowad, who is XYZ's president, in addition to serving on the board).[1]

Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and various state laws. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For

---

[1] The eight directors named in the complaint as individual defendants are Mohamed Mowad, Sandy Check, Jerry Ching Hor, Ahmed Moharrem, Chi Yuen Lo, Shengwe Zhang, Mohamed Salem, and Dindyal Rampersaud.

the following reasons, I grant the motion to dismiss for failure to state a claim under Rule 12(b)(6).

## I. Background

### A. Factual Background

The following factual allegations are drawn from the amended complaint. Defendant XYZ coordinates "black car" ground transportation services. First Amended Compl. ("FAC") ¶ 26, ECF No. 2. Each share of XYZ entitles a shareholder to drive, or rent to a third party, one car. *Id.* Plaintiffs allege that in February 2019, they discovered that XYZ's President, defendant Mowad, "had committed various wrongdoings, unethical behavior, breaches of fiduciary duty and theft, self-dealing" to benefit himself and the Board at Plaintiffs' expense. *Id.* ¶ 52.

The complaint is short on specifics, but Plaintiffs allege (among other things) that Defendants engaged in "oppressive conduct that destroy[ed] or substantially diminish[ed] the value" of their shares, *id.* ¶ 42; threatened them "on a daily basis . . . with arbitrary and unwarranted fines" and the "expulsion and forced sale of their shares," *id.* ¶ 45; "confiscate[d]" the shares, and "through self-dealing, convert[ed] these shares to their own use and benefit." *Id.* ¶ 40.

Plaintiffs contend that the forced redemption of their shares, and their concomitant expulsion from the firm, were done

in retaliation for the plaintiffs having demanded an investigation into Mowad's earlier wrongful acts. *Id.* ¶ 54. They say that Defendants filed a series of baseless grievances — what the parties call "10-5 violations" — against Plaintiffs.[2] *Id.* ¶ 58. Defendants then "terminated, expelled and fined all of the Plaintiffs individually herein in excess of $20,000.00 without any cause, reason, or justification." *Id.* ¶ 58.

Upon termination, Defendants forced Plaintiffs to sell their shares of XYZ at "an extremely diluted value below the fair market value of such shares." *Id.* ¶ 54. Each share sold for $5,000, which Plaintiffs claim was a "gross undervaluation." *Id.* ¶ 83. These actions, Plaintiffs allege, were all part of a long-term "scheme," beginning in 2010, to enable members of the Board to obtain additional shares at artificially low prices. *Id.* ¶¶ 77, 119.

B.  **Procedural History**

This lawsuit is the latest in a series of actions — heretofore all unsuccessful — by Plaintiffs and other former XYZ shareholders. In September 2011, a group of former XYZ

---

[2] Both parties use the term "10-5 violations" to describe the notices XYZ sent Plaintiffs to inform them of disciplinary charges, so I refer to them as such. The parties do not, however, explain why these notices are called "10-5." XYZ's by-laws state that the Security Chairman is responsible for issuing "10-5's," but the by-laws also do not define them. Copies of these "10-5" notices, submitted by Plaintiffs, say "Security Charge/Hearing Notice" at the top. *See, e.g.*, Part 1 of Exs. to Pls.' Opp. 12-13, ECF No. 20-1.

3

shareholders, including one current plaintiff (Abdelhamid), sued XYZ and certain directors in New York State Supreme Court on behalf of themselves and "all other Shareholders of XYZ." *See* Ex. 3 to Declaration of Deana Davidian ("Davidian Decl."), ECF No. 17-3.  They challenged (1) their terminations and fines, (2) the sale of their shares for "less than market value," (3) embezzlement of funds, and (4) Mowad's acquisition of certain XYZ shares.  *Id.*  The court dismissed the majority of these claims in April 2013, *see* Ex. 4 to Davidian Decl., ECF No. 17-4, and the remainder in January 2014.  *See* Ex. 5 to Davidian Decl., ECF No. 17-5.[3]

In April 2019, several of the plaintiffs here sued Defendants — again in New York State Supreme Court — alleging, among other things, that (1) XYZ's disciplinary charges against them were "false," (2) XYZ had imposed "unwarranted" fines in "retaliation" for their having accused Mowad of misconduct, and (3) their shares were sold for less than fair market value.[4]  *See* Ex. 6 to Davidian Decl. 5-6, ECF No. 17-6.  The court dismissed

---

[3] The Supreme Court's order dismissing this 2011 case mentions three previous lawsuits involving similar subject matter.  Ex. 4 to Davidian Decl. 12, ECF No. 17-4.

[4] The plaintiffs in the April 2019 action included all of the plaintiffs in this action except Tian, Hui, and Zou.  *See* Ex. 6 to Davidian Decl. 2, ECF No. 17-6.

4

this action in July 2019.  *See* Ex. 11 to Davidian Decl. 7, ECF No. 17-11.[5]

In December 2019, plaintiffs Abdelhamid, Abdelnaby, Chan, Elbaridi, and Farag filed yet another lawsuit against XYZ and Mowad, again in New York State Supreme Court.  They challenged their terminations, alleging violations of New York Labor Law ("NYLL"), including that they were terminated "in retaliation for the complaints [they] lodged" at the February 2019 annual XYZ shareholder meeting.  Ex. 12 to Davidian Decl. 10, 13, 16, 19, ECF No. 17-12.  In March 2020, those plaintiffs stipulated to the dismissal of their NYLL claims with prejudice.  Ex. 14 to Davidian Decl. 2, ECF No. 17-14.

Defendants advise that, in addition to these unfavorable terminations in prior cases, several plaintiffs have waived claims against XYZ, either in the course of prior actions or during their separation from the company.[6]  Defendants seek to

---

[5] In dismissing the April 2019 complaint, the court held (1) that plaintiffs' terminations, the fines imposed against them, and the sale of their radios were lawful, proper, and required or permitted by XYZ's by-laws; (2) that "there is no evidence" that the defendants breached any fiduciary duty owed to plaintiffs; and (3) that plaintiffs' other allegations, including that Mowad abused his power, obtained a life insurance policy paid for by XYZ, and diverted funds that XYZ recovered from a settlement, were "conclusory and unsubstantiated."  *See* Ex. 11 to Davidian Decl. 7, ECF No. 17-11 (state court order dated July 25, 2019).

[6] For example, Defendants point to (i) a release-of-claims form executed and signed by plaintiff Tian, *see* Ex. 2 to Declaration of Yuk Man Lee ("Lee Decl."), ECF No. 18-2 (document entitled "RELEASE" in bold, capital letters, stating that Tian "releases and discharges" XYZ, its directors, and officers from all actions or claims relating to "any matter[,] cause or thing

dismiss certain claims based on those releases. Defs.' Mem. in Supp. of Mot. to Dismiss, ECF No. 16 ("Defs. Br."), at 6, 21. I do not consider the releases at this stage, however, because these documents are outside the pleadings, and not all of the relevant documents were made part of the court record in the prior actions (such that I could take judicial notice of them here).

Plaintiffs filed the instant action on September 9, 2020. ECF No. 1. They amended their complaint as of right one day later. ECF No. 2. The amended complaint alleges eight claims: one civil RICO claim, under 18 U.S.C. § 1962(c) and (d) (Count Eight), and state-law claims for wrongful termination and retaliation, breach of fiduciary duty, unjust enrichment, conversion or embezzlement, and self-dealing (Counts One through Seven). *Id.*

At a pre-motion conference in December 2021, Plaintiffs heard Defendants' articulated bases for dismissal and then declined the Court's invitation to amend the complaint

---

whatsoever from the beginning of the world to the day of the date of this RELEASE . . . ."); (ii) legends appearing on checks made out to and deposited by plaintiffs Bouhmaza, Xiao Hua Chen, and Zou, which state that by "cashing this check, you are releasing all claims against XYZ and its directors [and] officers," *see* Exs. 4-9 to Lee Decl., ECF Nos. 18-4 to 18-9; and (iii) the 2020 stipulation pursuant to which plaintiffs Abdelhamid, Abdelnaby, Chan, Elbaridi, and Farag, agreed to dismiss with prejudice their state-court retaliation claims. Ex. 14 to Davidian Decl., ECF No. 17-14 (plaintiffs' claim "for alleged violations of Section 215 of the NYLL . . . is dismissed with prejudice"). Because these alleged releases are not part of the record before me, I do not consider them in connection with this motion.

further.  *See* Pre-Motion Conference Tr., ECF No. 32; *see also* Defs.' Ltr. Requesting a Pre-Motion Conference, ECF No. 12. Defendants then moved to dismiss for lack of jurisdiction — arguing Plaintiffs lack standing — and failure to state a claim. Defs. Br.

## II. Legal Standard

As discussed below and in the margin, Defendants' RICO standing argument presents no jurisdictional impediment and is properly reviewed under Rule 12(b)(6), not 12(b)(1).[7]  In the 12(b)(6) analysis, I reach the merits on only the RICO claim, as that is the sole basis for federal jurisdiction.

To overcome a Rule 12(b)(6) motion, a plaintiff must plead factual allegations sufficient "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[8]  A claim is plausible "when the

---

[7] The Second Circuit has explained that RICO standing should be addressed under Rule 12(b)(6): "lack of RICO standing does not divest the district court of jurisdiction over the action, because RICO standing, unlike other standing doctrines, is sufficiently intertwined with the merits of the RICO claim that such a rule would turn the underlying merits questions into jurisdictional issues." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 116–17 (2d Cir. 2003), *as amended* (Apr. 16, 2003), *abrogation on other grounds recognized by Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016); *see also Am. Psych.*, 821 F.3d at 359 ("The Supreme Court has recently clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1387 (2014)).

[8] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, and internal quotation marks.

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013).

### III. Discussion

Plaintiffs level their civil RICO claim against all Defendants. For the reasons set forth below, this claim is dismissed. Plaintiffs' state-law claims are dismissed as abandoned because Plaintiffs' opposition brief does not address Defendants' arguments that Plaintiffs fail to state claims for each such claim. *See* Pls.' Mem. in Opp. to Mot. to Dismiss, ECF No. 20 ("Pls. Opp.").

**A.   RICO Claim**

Plaintiffs allege that Defendants violated RICO by conspiring to deprive them of the value of their XYZ stock. FAC ¶ 119. To establish a civil RICO claim, a plaintiff must allege "(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity," as well as "injury to business or

8

property as a result of the RICO violation." *Lundy*, 711 F.3d at 119.

### 1. RICO Standing

Defendants argue, as a threshold matter, that Plaintiffs lack standing to bring a RICO claim because they are alleging harms against XYZ and not against them personally. This argument is not jurisdictional, for the reasons set out in note 7 *supra*. It is also not correct, at least as applied to the instant factual allegations.

"To satisfy RICO's standing requirements, a plaintiff must demonstrate (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003). "The requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage." *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 356 (E.D.N.Y. 2005).

It is generally settled that shareholders lack standing to bring a claim in their individual capacities for injuries to the corporation – *i.e.*, claims that are derivative of the corporation's injury. *See, e.g., Lakonia Mgmt. Ltd. v. Meriwether*, 106 F. Supp. 2d 540, 551 (S.D.N.Y. 2000) ("A decrease in value of a holder's shares which merely reflects the decrease in value of the firm as a result of the alleged illegal

9

conduct is derivation rather than direct in nature and cannot confer individual standing under RICO.").

New York courts have applied Delaware's framework to determine whether a claim is direct or derivative:

> [A] court should look to the nature of the wrong and to whom the relief should go. The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation.

*Yudell v. Gilbert*, 949 N.Y.S.2d 380, 384 (App. Div. 2012) (adopting test framed by Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)). "Thus, under *Tooley*, a court should consider (1) who suffered the alleged harm (the corporation or the stockholders); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)." *Yudell*, 949 N.Y.S.2d at 384.

Plaintiffs satisfy this requirement because they allege injuries that are distinct from injuries to the corporation itself, and Plaintiffs themselves — not XYZ — would receive the benefit of any recovery. They claim that Defendants "confiscate[d]" and "convert[ed]," or improperly redeemed, the shares they held, FAC ¶ 40, rather than simply diminishing the value of those shares by looting the corporation. *See, e.g.*, *id.* ¶¶ 45, 74-75, 119, 123. Indeed, the complaint is devoid of

10

any real suggestion that Defendants' conduct diminished XYZ's enterprise value. Accordingly, they have statutory standing to bring the RICO claim.

### 2. Pattern of Racketeering Activity

Despite having standing, Plaintiffs fail to state a RICO claim because they do not allege a pattern of racketeering activity. A pattern of racketeering activity must consist of two or more predicate acts. 18 U.S.C. § 1961(5). Plaintiffs allege that Defendants committed — as predicate acts — mail fraud, 18 U.S.C. § 1341, and money laundering, 18 U.S.C. § 1957. But Plaintiffs fail to plead a valid claim of mail fraud.[9]

Mail fraud requires "the existence of a fraudulent scheme and a mailing in furtherance of the scheme." *Lundy*, 711 F.3d at 119. The "gravamen" of mail fraud is the "scheme to defraud." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). "Allegations of mail fraud . . . must be made with the particularity required by Rule 9(b), which requires that the complaint allege content, date, place, or intent of any alleged misrepresentation." *Entretelas Americanas S.A. v. Soler*, 840 F. App'x 601, 603 (2d Cir. 2020), *as amended* (Jan. 7, 2021); *see also* Fed. R. Civ. P. 9(b) ("[A] party must state with

---

[9] Because Plaintiffs fail to make out a claim for mail fraud, I do not reach the question of whether they have adequately alleged money laundering.

11

particularity the circumstances constituting fraud or mistake.").

"Pursuant to this higher pleading standard, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Entretelas Americanas*, 840 F. App'x at 603-04. Where "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987). The complaint falls well short of meeting these standards.

First, the allegations of fraud are not particularized as to any individual defendant other than Mowad. Plaintiffs are required to "plead facts that describe each defendant's involvement in the fraud," *see LLM Bar Exam, LLC v. Barbri, Inc.*, 271 F. Supp. 3d 547, 587 (S.D.N.Y. 2017), *aff'd*, 922 F.3d 136 (2d Cir. 2019), but the complaint describes only the involvement of defendant Mowad. *See generally* FAC. Otherwise, Plaintiffs simply refer generically to the conduct of "Defendants." *E.g., id.* ¶¶ 40-42, 55, 58-60, 65-66, 80, 119,

12

123-129.  Even as to Mowad, the allegations are insufficient for the reason that follows.

Second, Plaintiffs identify no fraudulent communications and provide no detailed description of any underlying scheme.  The complaint speaks to the motive for the alleged fraud, describing a "scheme" to "sell shares of stocks [sic] . . . to members of the Board of Directors at an extremely diluted and depressed value," *id.* ¶ 74; to "criminally deprive the value of [Plaintiffs'] stocks . . . for the ultimate illegal financial gains of the [board] members," *id.* ¶ 123; and to "wrongfully terminate employment agreement [sic] of the Plaintiffs with XYZ and purchase the capital stocks of the Plaintiffs at a diluted price."  *Id.* ¶ 82.  But the complaint says next to nothing specific about the *modus operandi* of the alleged fraud.

The only misrepresentations that Plaintiffs point to are the allegedly false statements about Plaintiffs' conduct — the allegations underpinning the "10-5" violations.  *See* FAC ¶ 50 (alleging "erroneous or false 10-5 violations against Plaintiffs to fine or to terminate their employment"); *see also* ¶ 58 (Defendants issued "false, unwarranted and baseless violations (10-5) against all Plaintiffs" and then "terminated, expelled and fined all of the Plaintiffs individually herein in excess of $20,000.00 without any cause, reason, or

13

justification."). Plaintiffs do not explain what these "10-5 violations" were, where and when they were issued, or how they were false. *Cf. Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 228 (E.D.N.Y. 2014) (mail fraud claim contained sufficient particularity where it identified specific reports containing fraudulent statements, and specific false statements within those reports; date of mailing and recipient; and "the manner in which those statements were false by alleging specific facts that, if true, would support the existence of a fraudulent scheme"). Moreover, it is not clear how these statements could be calculated to deceive Plaintiffs, given that they would have been aware (by definition) of their own conduct.

Likewise, Plaintiffs provide no "detailed description" of the underlying scheme. *Curtis & Assocs., P.C. v. L. Offs. Of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 176-77 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011); *see also, e.g., A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 500 (S.D.N.Y. 1998) (allegations of threats and abusive conduct do not constitute scheme to defraud). For example, the complaint provides no basis at all — let alone a plausible basis — to support the allegation that the redemption price paid was below fair market value. The complaint states, again in

14

conclusory fashion, that Plaintiffs' shares were redeemed at $5,000 per share, "a fraction of the[ir] true value." But it alleges nothing about the "true value" of the shares or why this was a "gross undervaluation." *Id.* ¶ 82-83.[10] Further, the complaint does not allege which board members participated, or how. Again, Plaintiffs fall back on conclusions. *E.g.*, *id.* ¶ 94 ("Defendants have improperly deprived the shareholders of their money and their property through the use of trickery, deceit and fraudulent practices."). These allegations are not sufficiently particularized to meet Rule 9(b)'s higher pleading standard.

Without plausibly alleging mail fraud, Plaintiffs cannot establish two or more predicate acts to show a "pattern

---

[10] In opposing the motion to dismiss, Plaintiffs filed a series of declarations providing supplemental information regarding the value of their shares and details about Defendants' alleged wrongdoing. *See* Exs. 1-2 to Pls. Opp., ECF Nos. 20-1 to 20-2. These declarations were prepared subsequent to the filing of Defendants' motion to dismiss. "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials," *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016), comprised of "the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021). "A district court therefore errs when it considers affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss." *Id.* at 107. Because Plaintiffs' additional materials are outside the pleadings and not "integral" to the complaint, I have not considered them in deciding this motion. *See e.g.*, *Toretto v. Donnelley Fin. Sols., Inc.*, No. 20-CV-2667, 2022 WL 348412, at *5 (S.D.N.Y. Feb. 4, 2022) (declining to consider a document that was not integral to the complaint).

of racketeering activity" under Section 1961(5).[11]  Their RICO claim thus fails as a matter of law and is dismissed with prejudice.

Dismissing the RICO claim with prejudice is appropriate because Plaintiffs were given notice of Defendants' specific objections and offered the opportunity to amend, but declined multiple times.  *See City of Pontiac Policemen's & Firemen's Retirement Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (district court's denial of leave to amend and dismissal with prejudice were appropriate where plaintiffs had an opportunity to amend their complaint after notice of pleading deficiencies).  At the pre-motion conference, after Defendants set forth the various bases for dismissal, I asked Plaintiffs whether they wished to amend; they said no.[12]  Based on that demurrer, I set a briefing schedule for this motion.

---

[11] Defendants do not argue that Plaintiffs fail to allege money laundering.  The Court need not reach this question, however, because a pattern of racketeering requires two or more predicate acts.

[12] At the beginning of the conference, I explained that the purpose of pre-motion conference is "to circumvent the situation where a motion to dismiss is filed, is fully briefed, is orally argued, and only then does the plaintiff identify certain proposed amendments . . . to the pleadings, thereby necessitating that we start the entire cycle over again," Pre-Motion Conference Tr. 3:2-7, ECF No. 32.  I clarified that the pre-motion conference was not a venue to argue the *merits* of the motion to dismiss; rather, "the ultimate question" for Plaintiffs would be whether "they want to proceed to briefing and arguing the motion based on complaint as is . . . or, having heard a preview of the defense's arguments, [whether they] want to avail [themselves] of right to amend at this stage?"  *Id.* at 3:23-4:7; *see also id.* at 17:6-8 (reminding counsel that the "purpose of the premotion conference . . . is to decide whether you want to amend the complaint now or not").  After

16

It was a surprise, then, when Plaintiffs' opposition brief requested leave to amend as an "alternative" to granting Defendants' motion, *see* Pls. Opp. 25, but Plaintiffs provided no proposed amendments. This violates not only Rule III.A.1 of this Court's Individual Rules (requiring a proposed complaint and redline), but also established procedure. *See* Fed. R. Civ. Pro. 7(b) ("A request for a court order must be made by motion. The motion must . . . state with particularity the grounds for seeking the order."); *see also Credit Chequers Info. Servs., Inc. v. CBA, Inc.*, 205 F.3d 1322, 1322 (2d Cir. 2000) ("[A]ppellant has given no indication of what amendment is proposed that would state a valid claim for relief.").

Plaintiffs again received notice, and an opportunity to request leave to amend, at oral argument on this motion. I asked Plaintiffs' counsel to confirm whether Plaintiffs were seeking to amend the complaint: "[L]et me just make sure the record is clear here. . . . [I]n response to my question, are you seeking leave to amend now? You're saying in response, no, we are not seeking leave to amend now; is that correct?" Oral

---

going through each element of a RICO claim, the heightened pleading standard under Rule 9(b), and specifically asking Plaintiffs' counsel whether he wanted to amend the RICO claim, counsel replied that "we believe, at the pleading stage, we have sufficiently alleged" it. *Id.* at 18:6-7. At the end of the conference, I presented the issue to counsel again: "[T]hat is your choice and if you want to say, we rest on the complaint as currently drafted, then we're happy to set a briefing schedule right now . . . ." *Id.* at 26:10-13. Counsel stated: "We think we have pleaded enough. Whether or not we can ultimately win, that's a different story. We think we have met . . . the very beginning hurdle to allege a civil RICO claim." *Id.* at 27:11-13.

17

Argument Tr. 17:18-22, ECF No. 33. Counsel replied, "Yes . . . because we think we have already alleged sufficiently . . . at least for me sustain a . . . motion to dismiss." *Id.* at 17:23-25. Plaintiffs maintained their position that they sufficiently alleged a RICO violation, but said they wished to amend, *after* a decision, *if* the Court granted Defendants' motion. *Id.* at 18:1-4.[13] That kind of optionality, however, is not and should not be available at this late stage.

For the reasons set out above, Plaintiffs' RICO claim is dismissed with prejudice.[14]

---

[13] Plaintiffs' counsel stated: "[A]fter you render a decision, and you think there's . . . a deficiency there, . . . we would like to be given an opportunity to amend the complaint to address those deficiencies." *See also id.* at 27:4-5 (Q: "So are you asking for leave to amend right now? A: "I'm not asking for leave to amend on the elements that the plaintiff has [sic]." Q: "[Y]ou are, or you are not?" A: "[A]fter you make a decision, and if you think we . . . have not alleged sufficient acts to sustain mail fraud, then we'll be asking for the opportunity to amend. But currently we are confident that we have already . . . stated sufficient facts . . . to sustain our allegations, at least to sustain against a motion to dismiss.").

[14] I note that, in response to the Court's directive to submit briefing on the question of dismissal with or without prejudice, Oral Argument Tr. 23-24, ECF No. 33. Plaintiffs' letter addressed the different question of whether leave to amend would be appropriate. Pls'. Ltr. dated March 2, 2022, ECF No. 29. However, during oral argument Plaintiffs' counsel expressly confirmed that he was requesting that dismissal be without prejudice – not for leave to amend. *Id.* at 18:5-10 (Q: "I think you're really saying that any dismissal of the complaint should be without prejudice." A: "Correct." Q: "Alright, so we don't . . . have a live request for leave to amend."). To the extent Plaintiffs' letter is a belated request to amend the complaint, that request is denied due to Plaintiffs' undue delay, multiple opportunities to amend, and prejudice to Defendants. *E.g., Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (affirming district court's denial of leave to amend, based on plaintiff's "delay in seeking leave to amend was inexcusable given the previous opportunities to amend, and the defendants' burden and prejudice").

**B.     State-Law Claims**

Plaintiffs' state-law claims are dismissed because Plaintiffs have abandoned them. "District courts in this circuit have found that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims." *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161 (E.D.N.Y. 2018); *see also, e.g.*, *Burchette v. Abercrombie & Fitch Stores, Inc.*, 8-CV-8786, 2009 WL 856682, at *9 (S.D.N.Y. Mar. 30, 2009) (dismissing, as abandoned, claim that plaintiff failed to address in her opposition to defendant's motion to dismiss); *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722-23 (S.D.N.Y. 2005) ("Because Plaintiff did not address Defendant's motion to dismiss with regard to this claim, it is deemed abandoned."); *Lipton v. Cty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

Here, Defendants moved to dismiss each of Plaintiffs' state-law claims – Counts One through Seven – for failure to state a claim. *See* Defs. Br. 21-29. Yet Plaintiffs' opposition brief did not address any of Defendants' specific arguments, instead stating simply that "Plaintiffs have stated a claim for each and every cause of action listed in the Complaint." Pls.

19

Opp. 26.[15]  Plaintiffs also stated that they "are not seeking damages for any claims beyond the RICO cause of action."  *Id.*  The Court thus deems these claims abandoned, and they are dismissed with prejudice.  *See e.g., Laface*, 349 F. Supp. 3d at 161-62 (dismissing abandoned claim with prejudice); *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 230 (E.D.N.Y. 2010) (same).

### IV.  Conclusion

For these reasons, Defendants' motion to dismiss is GRANTED.  Plaintiffs' complaint is dismissed with prejudice.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

                                                      /s/ Eric Komitee
                                                      ERIC KOMITEE
                                                      United States District Judge

Dated:    August 1, 2022
           Brooklyn, New York

---

[15] At oral argument, Plaintiffs acknowledged that they did not address these arguments.  Plaintiffs' counsel said Plaintiffs "didn't respond [to the arguments] because we don't think they deserve a response."  Oral Argument Tr. 14:3-4, ECF No. 33; *see also id.* 16:3-7 ("Even if we do not respond, it doesn't mean we abandon the claims. We just simply not worth [sic] . . . any response here.").